# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-01055

JOHN SWOMLEY, TODD BARKER, DAVID GOLDSTEIN, ELIZABETH SWOMLEY, OLIVIA SWOMLEY, JAMES SWOMLEY, SARAH SWOMLEY, ROBERT COSINUKE, WILLA COSINUKE, JENNIFER KRIER, ABIGAYLE COSINUKE, AUGUST COSINUKE, KATHRYN VAGNEUR, BRUCE BARKER, GERRY BARKER, TOM STEWART, BARBRA STEWART, THOMAS H. STEWART, KATHERINE KENNEY, ERIC VOTH, MICHELLE VOTH,

     Petitioners.

vs.

KAREN SCHROYER, in her official capacity as District Ranger, Aspen-Sopris Ranger District, White River National Forest, United States Forest Service, and

UNITED STATES FOREST SERVICE, a federal agency of the United States Department of Agriculture,

     Federal Respondents.

---

## PETITION FOR REVIEW OF AGENCY ACTION

---

1.     Petitioners respectfully file this civil suit challenging the actions of federal respondents Karen Schroyer and the United States Forest Service (Forest Service) authorizing the Upper Fryingpan Vegetation Management Project (the Upper Fryingpan Project) in Colorado. This suit alleges violations of the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 *et seq.*, and the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq.*

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331. The Forest Service has carried

out final agency action that is subject to judicial review under 5 U.S.C. § 704. An actual

justiciable controversy exists between Petitioners and the Forest Service. This Court has

authority to issue declaratory and injunctive relief under 5 U.S.C. §§ 2201 & 2202 and 5

U.S.C. §§ 705 & 706.

3.      Venue is proper in this jurisdiction under 28 U.S.C. § 1391 because a substantial part of

the events giving rise to this claim occurred in this judicial district and the property that is

the subject of the action is situated in this judicial district. The Environmental

Assessment and Final Decision were prepared in this judicial district. The lands at issue

in the Upper Fryingpan Project are in this judicial district. In addition, respondent Karen

Schroyer resides in this judicial district. Respondent carried out her official duties as

District Ranger in this judicial district.

4.      Petitioners have exhausted any and all available and required administrative remedies

pursuant to 7 U.S.C. § 6912(e).

**PARTIES**

5.      Petitioners are longtime residents of the Upper Fryingpan Valley (the Valley) who are

dedicated to the conservation of the Valley for its biodiversity, recreational value, and

natural beauty. They reside in the Aspen-Sopris Ranger District and use the trails, rivers,

and roads throughout the White River National Forest and the Upper Fryingpan Project to

fish, hike, mountain bike, observe wildlife, and enjoy nature. Petitioners have also built

businesses and livelihoods off of tourism and recreation in the area. Petitioners have

engaged in these activities for decades and will continue to do so in the near future. These

activities are central to Petitioners' lives, the lives of their children, and the lives of future generations.

6.      The approval of the Upper Fryingpan Project has already caused local residents to change how they recreate in the Valley and has forced many to plan for changes to their employment and future income.

7.      If the project is implemented, Petitioners and tourists are likely to recreate less in the Valley, harming Petitioners' enjoyment of the area's natural beauty and decreasing the economic value such recreation brings to local residents.

8.      Petitioners thus have a procedural interest in ensuring that the Forest Service effectively protects this area in compliance with all federal statutes and regulations. Petitioners' recreational, personal, economic, and other interests have been and will continue to be irreparably damaged if the Forest Service implements the Upper Fryingpan Project as planned. The Forest Service's Environmental Assessment, Finding of No Significant Impact, and Final Decision Notice fail to comply with federal environmental law. These are actual, concrete, and particularized injuries caused by the Forest Service's failure to comply with nondiscretionary duties under NEPA and the APA. The relief sought here will redress these injuries.

9.      Respondent KAREN SCHROYER is the District Ranger for the Aspen-Sopris Ranger District of the White River National Forest. Petitioners here are suing Ms. Schroyer in her official capacity as District Ranger. In this role, Ms. Schroyer signed the Final Decision Notice approving the Upper Fryingpan Project thus enabling its implementation. As District Ranger of the Aspen-Sopris Ranger District, Ms. Schroyer is also responsible for the actions and inactions of Forest Service officials challenged in this Petition for

Review, including the completion of the Upper Fryingpan Project Environmental

Assessment/Finding of No Significant Impact and related responses to Petitioners'

comments and objections.

10.   Respondent UNITED STATES FOREST SERVICE is an agency of the United States

and division of the United States Department of Agriculture. The Forest Service is

charged with managing the White River National Forest and Aspen-Sopris Ranger

District in accordance with relevant federal statutes and regulations.

## FACTS

### PROJECT DESCRIPTION

11.   The Upper Fryingpan Project is a vegetation management project proposed for

implementation by the Aspen-Sopris Ranger District of the White River National Forest.

The Upper Fryingpan Project is located within the White River National Forest in Eagle

County and Pitkin County.

12.   The Upper Fryingpan Project authorizes the logging of 1,631 acres of aspen, lodgepole

pine, and mixed conifer (spruce/fir).

13.   To access the proposed project area, the Upper Fryingpan Project authorizes the

construction of nine miles of roads. To create such roads and implement the Upper

Fryingpan Project, the Forest Service will clear-cut and selectively cut trees then remove

them to be used as for forest products and/or biomass fuel.  The logging waste, known as

"slash," will either be piled and burned, lopped and scattered, or removed for biomass

energy generation.

14.   The Upper Fryingpan Project area is roughly located east of Basalt, Colorado and South

of Eagle, Colorado. Additionally, the Upper Fryingpan Project area is located near a

number of Wilderness Areas. The Mount Massive Wilderness lies directly southeast of the Upper Fryingpan Project area, the Hunter-Fryingpan Wilderness is south and southeast, and the Holy Cross Wilderness Area lies directly east and northeast.

15.     The Upper Fryingpan Project area is habitat for the Canada lynx, red squirrel, snowshoe hare, goshawk, and elk, as well as diverse flora and fungi species.

16.     For generations, local residents have made the Valley their home and have used the Upper Fryingpan Project area for recreational and professional activities. Petitioners frequently use trails, rivers, and roads throughout the White River National Forest to run, mountain bike, fish, and hike. They enjoy the scenic, wild area and connection to nature that the biologically diverse forest provides. Now, they face the heartache of having to look at a scarred countryside that would not quickly recover from logging activities. And they fear for the preservation of the flora and fauna that rely on the Upper Fryingpan Project area for survival.

## PROJECT HISTORY

17.     On October 6, 2016, the Aspen-Sopris Ranger District of the White River National Forest opened a sixty-day window for parties to comment on the Forest Service's proposal to implement the Upper Fryingpan Project.

18.     On December 2 and December 5, 2016, Petitioners filed scoping comments on the proposed project. Petitioners timely filed their comments before the end of the sixty-day comment period. Petitioners also attended a public meeting on the Upper Fryingpan Project on October 26, 2016, and voiced their concerns in person.

19.     On December 19, 2017, the Aspen-Sopris District Ranger announced the availability of the Environmental Assessment (EA) that included a Finding of No Significant Impact

(FONSI) and determined that a more thorough Environmental Impact Statement (EIS) was not necessary. On December 21, 2017, the District Ranger opened up a forty-five-day objection period for the EA/FONSI.

20. On February 2, 2018, Petitioners filed objections to the EA/FONSI. Petitioners timely filed their objections within the forty-five-day objection period.

21. On April 19, 2018, the Forest Service responded to Petitioners' objections.

22. On April 30, 2018, the Forest Service released its Final Decision Notice, authorizing the implementation of the Upper Fryingpan Project.

23. By moving forward with the EA/FONSI as is, the Forest Service will implement the Upper Fryingpan Project without considering its impacts on climate change or the full effects of deforestation. The Forest Service will not conduct these analyses in the future.

CLIMATE CHANGE IMPACTS OF THE UPPER FRYINGPAN PROJECT

24. The Forest Service's EA/FONSI failed to account for the foreseeable impacts of the Upper Fryingpan Project on climate change, including the effects of deforestation and the use of timber for biomass energy.

25. A primary purpose of the Upper Fryingpan Project is to provide commercial forest products and biomass fuel to local industries. The Forest Service plans to sell at least some of the Upper Fryingpan Project's timber harvest as biomass to the Eagle Valley Clean Energy Plant in the Town of Gypsum (Gypsum biomass plant).

26. Biomass energy is created by burning solid biomass, such as forest products, to produce heat. Though often promoted as a form of renewable energy, the process releases carbon dioxide, volatile organic compounds, particulate matter, and nitrogen dioxide into the air. These pollutants cause air quality problems that affect public health and contribute to

climate change. Burning biomass emits approximately 50 percent more carbon dioxide, 150 percent more nitrogen dioxide, 600 percent more volatile organic compounds, and 190 percent more particulate matter per megawatt-hour than coal. Air pollution controls are important for decreasing emissions but cannot eliminate the serious impacts of biomass altogether.

27.     The Gypsum biomass plant was built with a $250,000 grant from the Department of Agriculture and $40 million worth of federal loan guarantees. It opened with the expectation of using approximately 10 percent of the White River National Forest as a fuel source. The plant began burning biomass from forest products in December of 2013.

28.     Greenhouse gas emissions at the Gypsum biomass plant from burning Upper Fryingpan Project timber are certain.

29.     Deforestation under the Upper Fryingpan Project will also decrease the White River National Forest's capacity to sequester carbon from the atmosphere, accelerating climate change.

30.     Forests are an important source of carbon sequestration. Increased growth of older, larger trees exponentially increases the amount of carbon a forest sequesters. The White River National Forest sequesters approximately twenty-nine tons of carbon per acre.

31.     Deforestation contributes to approximately 17 percent of annual anthropogenic greenhouse gas emissions.

32.     Beyond the direct reduction in carbon sequestration from logging, deforestation also decreases the health of the larger ecosystem that itself sequesters carbon. As discussed in the succeeding section, mycelium colonies sequester nearly half of the carbon dioxide removed by the forest ecosystem. These colonies sequester carbon directly from tree

roots and depend on healthy tree stands to survive. When this sequestration pathway is removed, mycelium can no longer sequester carbon dioxide. Consequent mycelium decay releases carbon dioxide back it into the atmosphere.

33.   The Fourth National Climate Assessment, to which the USDA contributed, explains the current and future impacts of climate change due to human activities. The assessment confirms that deforestation and land-use change contribute to increasing levels of atmospheric carbon dioxide, the largest contributor to human-caused global warming. It also establishes that forests act as an important carbon sink, offsetting approximately 11 percent of all US carbon dioxide emissions.

34.   In sum, the Forest Service's plan to remove approximately 1,631 acres from the White River National Forest will exacerbate climate change through biomass emissions, the elimination of a large carbon sink, and increased emissions from expiring mycelium colonies.

35.   In the EA/FONSI and response to Petitioners' objections, the Forest Service explicitly declined to address the substantial, cumulative impacts of the Upper Fryingpan Project on climate change.

36.   The Upper Fryingpan Project's impact on climate change is reasonably foreseeable because the Forest Service has committed to both deforestation and providing resources to the Gypsum biomass plant. Scientific consensus supports the actuality of these practices' climate impacts.

### IMPACTS OF THE UPPER FRYINGPAN PROJECT ON MYCELIUM

37.   The Forest Service failed to adequately analyze and account for the Upper Fryingpan Project's direct impact on fungi, a significant part of the forest ecosystem.

38.     The Upper Fryingpan Project will negatively affect fungi in a way that damages or
        destroys the organisms themselves and decreases the stability of the forest ecosystem as a
        whole.

39.     Mycelium, the vegetative part of a fungus, grows around the roots of trees. It is
        particularly prevalent in boreal and montane forests.

40.     Mycelium makes up a large part of the forest biome, although the only visible portion is
        its fruit—mushrooms that grow on the ground or on the surface of trees.

41.     Mycelium interacts symbiotically with flora. It provides host plants with nutrients,
        increasing the plant's resistance to environmental stressors such as drought and root
        pathogens. By attaching to roots, mycelium extends the area where plants can acquire
        nutrients. The host plant transfers nutrients to the mycelium in return.

42.     Mycelium-rich soil helps absorb moisture, making mountainous landscapes less
        susceptible to erosion. In degraded landscapes, mycelium helps ensure re-colonization by
        plants by fostering nutrient acquisition.

43.     Mycelium is also critical to carbon sequestration in forests. The majority of stored carbon
        in forests exists in mycelium and is transferred below ground through its symbiotic
        interactions with above-ground plant matter. Mycelium also increases soil microbial
        diversity vital to soil carbon sequestration.

44.     In addition to its benefits to the environment, mushroom hunting has become an
        increasingly popular recreational activity for residents and visitors in the Valley.

45.     Mycelium blankets the soil in a fibrous mass. Thus, impacts to one part of mycelium
        affect the organism as a whole.

46.   Clear-cutting degrades mycelium growth by disturbing the soil and removing the trees that are the organism's primary pathway for nutrient acquisition. Heavy thinning and cutting can drastically reduce and even eliminate fruiting bodies and significantly reduce underground fungal communities. Slash and burn procedures create hot spots that kill microbes below the soil, including mycelium.

47.   Decreased mycelium viability exacerbates climate change. A decrease in mycelium hampers carbon sequestration in the soil. Moreover, the decomposition of mycelium due to the loss of above-ground nutrient sources or through combustion releases a significant amount of carbon dioxide into the atmosphere.

48.   Mycelium regrows very slowly and requires abundant nutrient sources.  Because mycelium health is symbiotically linked with above-ground flora, it is unlikely to return to the same level of growth for a long time (i. e., after the forest regenerates and the trees grow to the size of the ones that were cut under the Upper Fryingpan Project.)

49.   The Upper Fryingpan Project will kill important mycelium in the Upper Fryingpan Project area, decreasing carbon sequestration, forest stability, and eliminating a popular recreational use of the forest. Regeneration of mycelium in the Upper Fryingpan Project area could take decades because the tree species in the Upper Fryingpan Valley regenerate and mature very slowly.

50.   The Forest Service recognizes the negative impacts of the Upper Fryingpan Project on mycelium growth and viability. However, the agency failed to adequately address these negative impacts.

51.   The EA/FONSI insufficiently analyze the important role mycelium plays in the forest ecosystem and the foreseeable negative impacts of the Upper Fryingpan Project.

52.     Moreover, the Forest Service failed to address the body of science upholding the
        importance of mycelium. Instead, the Forest Service selectively cited to science that
        supports its position while at the same time citing scientific uncertainty around the Upper
        Fryingpan Project's effects on fungi.

## CLAIMS FOR RELIEF - VIOLATIONS OF NEPA

## COUNT I

### FAILURE TO CONSIDER THE IMPACTS OF THE UPPER FRYINGPAN PROJECT ON CLIMATE CHANGE

53.     Petitioners incorporate by reference all preceding paragraphs.

54.     The regulations implementing NEPA require the Forest Service to disclose and analyze
        the environmental effects of the proposed action and alternatives to it. 40 C.F.R. §
        1502.16.

55.     The regulations implementing NEPA require the Forest Service to fully consider the
        direct, indirect, and cumulative impacts of the proposed action on the environment
        including all past, present, and reasonably foreseeable effects. 40 C.F.R. § 1502.16,
        1508.7

56.     The Forest Service failed to adequately disclose and analyze the direct, indirect, and
        cumulative impacts of the Upper Fryingpan Project on climate change:

        a)  The Forest Service did not account for the foreseeable greenhouse gas emissions
            that will result from burning timber at the Gypsum biomass plant.

        b)  The Forest Service failed to account for the decrease in greenhouse gas
            sequestration due to deforestation.

c) The Forest Service did not account for increased greenhouse gas emissions from mycelium decomposition.

57. Scientific literature on the aforementioned consequences supports that these climate impacts are reasonably foreseeable and easily quantifiable.

58. The Forest Service has failed to disclose and analyze direct, indirect, and cumulative impacts of the proposed action and alternatives as required by NEPA, which is arbitrary, capricious, and not in accordance with the APA. 5 U.S.C. § 706(2)(A).

## COUNT II

### FAILURE TO ADEQUATELY CONSIDER RELEVANT SCIENCE REGARDING THE UPPER FRYINGPAN PROJECT'S IMPACT ON FUNGI

59. Petitioners incorporate by reference all preceding paragraphs.

60. The Forest Service failed to use scientific integrity in its analysis by not addressing adverse scientific evidence.

61. The regulations implementing NEPA require the Forest Service to carry out its duties with scientific accuracy. 40 C.F.R. § 1502.24. To ensure scientific integrity, the Forest Service must discuss opposing views in its EA/FONSI, including scientific studies averse to its own analysis. 40 C.F.R. § 1502.9, §1502.24.

62. The Forest Service did not employ scientific integrity because it failed to address opposing scientific studies regarding the impact of the Upper Fryingpan Project on mycelium:

a) The Forest Service failed to address scientific studies that detail the symbiotic relationship between mycelium and boreal forests and the consequent detrimental effects of clear-cutting on mycelium health.

b)   The Forest Service failed to address scientific studies that demonstrated the

negative impacts of mycelium death on the ecosystem, including increased carbon

dioxide release and decreased forest resilience.

63.    The Forest Service has failed to use scientific integrity by omitting an analysis of

opposing science in its EA/FONSI as required by NEPA, which is arbitrary, capricious,

and not in accordance with the APA. 5 U.S.C. § 706(2)(A).

## COUNT III

### Failure to Prepare an Environmental Impact Statement

64.    Petitioners incorporate by reference all preceding paragraphs.

65.    NEPA requires the Forest Service to prepare an EIS when a proposed major federal

action may significantly affect the quality of the environment. 42 U.S.C. § 4332(2)(C).

To determine whether a project significantly affects the environment, the Forest Service

must look to its context and intensity. 40 C.F.R. § 1508.27.

66.    In analyzing context, both short-term and long-term effects are relevant. 40 C.F.R. §

1508.27(a).

67.    In evaluating intensity, the agency should consider (1) impacts that may be both

beneficial and adverse, (2) the degree to which the effects on the quality of the human

environment are likely to be highly controversial, (3) the degree to which the action may

establish a precedent for future actions with significant effects or represents a decision in

principle about a future consideration, and (4) whether the action is related to other

actions with individually insignificant but cumulatively significant impacts. 40 C.F.R. §

1508.27(b).

68.    The Forest Service has failed to properly evaluate the intensity of the Upper Fryingpan

Project because (1) it has failed to include an analysis of the project's adverse impacts on

climate change and mycelium health, (2) it has not considered the ways in which the

project is highly controversial among local residents who rely on the Valley for

recreation and economic stability, (3) it has not accounted for how the omission of the

aforementioned factors will allow the Forest Service to implement future projects that do

not consider similar significant environmental degradation, and (4) it has failed to

consider the individually insignificant but cumulatively significant impacts of greenhouse

gases emitted by burning forest products at the Gypsum biomass plant.

69.    If the agency's action is environmentally significant according to any of the criteria, the

agency must prepare an EIS. The presence of any single factor can require the

preparation of an EIS. The presence of several significance factors, when considered

cumulatively, can require the preparation of an EIS.

70.    The Upper Fryingpan Project will have a significant impact on the environment. Thus,

the Forest Service is required to prepare an EIS. The Upper Fryingpan Project implicates

nearly all of the significance factors listed above. Impacts include, among others,

destruction of Canada lynx habitat, increased carbon emissions, and impacts to tourism

and recreation. Without court action, the Forest Service can continue to approve and

implement projects that ignore climate change and significant ecological effects.

71.    Individually and cumulatively, these factors warrant that the Forest Service prepare an

EIS.

72.     Because the Upper Fryingpan Project will significantly impact the quality of the

environment, the Forest Service's decision to not prepare an EIS as required by NEPA is

arbitrary, capricious, and not in accordance with the APA. 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

Petitioners respectfully requests that this Court:

1.      Declare that the Forest Service violated NEPA and its implementing regulations in designing, analyzing, and approving the Upper Fryingpan Vegetation Management Project EA/FONSI and Final Decision;

2.      Vacate the Upper Fryingpan Vegetation Management Project EA/FONSI and Final Decision;

3.      Enjoin the Forest Service and/or its agents from proceeding with the Upper Fryingpan Vegetation Management Project, or any portion thereof, unless and until the violations of federal law set forth herein have been corrected to the satisfaction of this Court;

4.      Award Petitioners costs, attorneys fees, and other expenses under the Equal Access to Justice Act; and

5.      Grant Petitioners such other and further relief as the Court deems just and equitable.


Respectfully submitted and dated this 10th day of April, 2019.


John Swomley
BBO# 551450
Swomley & Tennen, LLP
50 Congress Street, Suite 600
Boston, MA 02109
Ph. (617) 227-9443
Fax (617) 227-8059
jswomley@swomleyandtennen.com
Attorney for Petitioners